James Shirley and his wife, Sheleh, appeal from a summary judgment entered in favor of Community Bank (bank).
The following facts are largely undisputed: In March 1993 the Shirleys contacted Gerald Player, the bank's branch president (president), regarding the possibility of obtaining a commercial loan to expand their kennel business and to pay off other debts. According to the Shirleys, the president appeared "enthusiastic" about the loan. Therefore, the Shirleys submitted a loan application.
In April 1993 the president, after receiving a favorable credit report on the Shirleys, visited the Shirleys' kennel facility. In June 1993 the president contacted the Shirleys and requested that they provide the bank with a formal estimate for their proposed business expansion. The Shirleys estimated that they would need at least $350,000.
Shortly thereafter, the president contacted the Shirleys again and informed them that "everything was looking good" and that the bank required a market appraisal, which included a sales, cost, and income analysis of their proposed business expansion. According to the Shirleys, the bank, through its president, promised them "that if the property appraised in the range of approximately $460,000, [the bank] would make them a loan."
Based on the foregoing representation, allegedly made by the bank, the Shirleys agreed to pay one-half of the appraisal fee "up front" and to pay the remainder from the loan proceeds. The property subsequently appraised for $460,000. However, the president met with the Shirleys and informed them that the loan committee declined their loan. The president explained to the Shirleys that, although their property received a favorable appraisal, the loan committee disagreed with their income projections.
Thereafter, the Shirleys used the market appraisal to their advantage and applied for subsequent loans with at least three other banking institutions, all of which declined their request for a loan. Subsequently, the bank contacted the Shirleys regarding their obligation to pay the remaining balance due on the market appraisal. The Shirleys refused to pay, and the bank filed a complaint, seeking to collect $2,425, the remaining balance due from the market appraisal. The Shirleys, in turn, filed a complaint against the bank, alleging promissory fraud.
In September 1995, upon a joint motion filed by both parties, the trial court consolidated the two cases. The record reflects that in October 1995, the bank filed a summary judgment motion, based solely on the Shirleys' claim for promissory fraud. In December 1995, however, the trial court apparently entered a summary judgment in favor of the bank in both of the cases. The Shirleys' first appeal to this court was dismissed in March 1996 because the trial court had not entered a final judgment. In November 1996 the trial court issued a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P.
The Shirleys appeal.
At the outset we would note that the notice of appeal filed by the Shirleys indicates that they are appealing from both cases (CV-95-623 and CV-95-1507). Additionally, both parties, on appeal, are disputing the issue of whether the trial court entered a summary judgment in favor of the bank in both cases.
After carefully reviewing the record, we find that the trial court's final amended order, dated November 7, 1996, which was certified to this court pursuant to Rule 54(b), Ala. R. Civ. P., clearly states that "there has been a complete adjudication as to [only] one of the claims" (CV-95-623). Thus, we conclude that the bank's claim against the Shirleys, regarding the unpaid portion of the appraisal fee, is still pending and has not been disposed of pursuant to Rule 56(c), Ala. R. Civ. P.
Therefore, the only issue before this court is whether the trial court properly entered a *Page 423 
summary judgment in favor of the bank on the Shirleys' claim for promissory fraud.
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher,636 So.2d 682 (Ala.Civ.App. 1994).
Once the movant makes a prima facie case showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact.Porter, 636 So.2d at 684.
Substantial evidence has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance ofFlorida, 547 So.2d 870, 871 (Ala. 1989).
As stated previously, the Shirleys contend that the bank, through its president, promised them a loan if their property appraised for $460,000. According to the bank, however, the Shirleys "assumed" that the bank would approve their loan based solely on the president's "enthusiasm."
The testimony revealed that the Shirleys knew that all loans in excess of $50,000 had to be approved by the loan committee and that the president did not have the unilateral authority to authorize such a loan. The bank noted that the Shirleys did not receive the results of the market appraisal until the day the president announced to them that their loan application had been denied.
The bank presented the following testimony in support of its contention that the president did not verbally promise that the Shirleys' loan application would be approved. The testimony also reveals that the Shirleys' reliance was not reasonable under the circumstances:
 "Q. Other than being enthusiastic about the loan . . ., did [the president] ever guarantee the loan to you or tell you that you would certainly get the loan?
 "A. As far as I'm concerned, whenever he said that if the appraisal value [came] up to a minimum of [$460,000], that was his verbal guarantee to me that, yes, the loan would go through. . . .
". . . .
 "Q. Did [the president] ever tell you that he would have to get approval from a loan committee?
 "A. Well, certainly. That's normal procedure that it's got to go through the loan committee. But he has either said or led me to believe that — I'm almost sure that he has already presented this before the [loan committee] or we would not have gone this far. And he, I think, is a smart enough businessman that he wouldn't have been guaranteeing me that this loan would go through if he hadn't had some kind of prior commitment or talked with somebody higher up in the bank.
 "Q. Other than your assumption or impression, you have no knowledge that that occurred, do you?
". . . .
 "A. Well, I wasn't there. I don't know. I didn't know for sure that he talked to them, but I was led to believe that he did.
"Q. What did he do to lead you to believe that?
 "A. His actions, his enthusiasm, his very positive attitude about this loan."
Therefore, in order for the Shirleys to withstand the bank's properly supported motion for a summary judgment, the Shirleys must present substantial evidence of promissory fraud, which includes "(1) a false representation; (2) of an existing material fact; (3) that is justifiably relied upon; (4) damage resulting as a proximate cause, and that, (5) at the time of the misrepresentation, [the president] had the intention not to perform the promised act and (6) that the [president] had an intent to deceive." Pinyan v. Community Bank, 644 So.2d 919,923 (Ala. 1994). *Page 424 
Based on the foregoing elements of promissory fraud, this court does not find any evidence that would satisfy the "substantial evidence" rule. Here, the evidence reveals that the president never verbally promised the Shirleys that their loan would be approved. Instead, the evidence reveals that the Shirleys based their assumption, that the loan would be approved, on the president's enthusiasm. However, the Shirleys knew that the loan was contingent upon the loan committee's approval and that the president did not have the authority to approve the loan.
The president testified that he thought the Shirleys were a good candidate for the loan and that everything looked favorable for them. The president does not dispute the fact that he was enthusiastic or optimistic. Instead, he explained that the loan committee did not agree with the Shirleys' stated income projections. And, as noted by the bank, the Shirleys did not learn the results of the market appraisal until the day the president informed them that the loan committee had denied their loan.
The Shirleys also failed to present any evidence of the bank's intent not to perform or of any intent to deceive. In fact, the evidence presented regarding the president's enthusiasm and optimism precludes any findings of deceit.
Additionally, we would be remiss in failing to note that the Shirleys' brief, at best, minimally complies with Rule 28, Ala. R. App. P. Rule 28 is a rather clear and concise rule, and compliance with the rule is not difficult. The failure to comply with Rule 28 can result in unfavorable consequences.
In the instant case the Shirleys failed to present any relevant argument in their brief. Instead, they attached a copy of their motion in opposition to the bank's summary judgment motion, which merely cited an abundance of testimony, and was supported by nothing more than general propositions of law.
Consequently, the judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.